NO.
12-10-00041-CR

      

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

MICHAEL
ANGELO BERBER,                      '                 APPEAL FROM THE 258TH

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '                 TRINITY COUNTY,
TEXAS

                                                        
                                         

                                                      MEMORANDUM
OPINION

Michael
Angelo Berber appeals his conviction for murder.  In two issues, Appellant
argues that the evidence is insufficient to support his conviction and that the
trial court should have suppressed a written statement he gave to the police. 
We affirm.

 

Background

In
July 2007, one of Mark Wayne Haslett’s neighbors knocked at the door of
Haslett’s trailer.  He received no response.  When he went into the trailer, he
found Haslett on the floor, unclothed and with blood on his body.  The neighbor
called for assistance.  Haslett had been stabbed and was dead.  A subsequent
police investigation coalesced around Appellant as the suspect.  A neighbor
reported having seen a person in the vicinity of Haslett’s trailer.  Appellant
had told others that he was going to burglarize Haslett’s home.  And he told an
acquaintance that he “did it” shortly after Haslett would have been killed. 
The acquaintance observed blood on Appellant’s hands.  The acquaintance later
testified that Appellant changed his clothes and burned his bloody clothes. 
Another acquaintance testified later that Appellant woke him up and asked for
clothing.  He said Appellant had blood on him and that Appellant told him he
had killed Haslett.  

Texas
Ranger Pete Maskunas located Appellant several months later and interviewed
him.  Appellant had been arrested in Harris County, Texas, and read his rights
at that time at a magistrate’s hearing.  Maskunas referenced that recitation of
Appellant’s rights at the beginning of his recorded interview, but he did not
advise Appellant of his rights during the recorded part of the interview. 
Appellant admitted killing Haslett.  He claimed that he stabbed Haslett after Haslett
attempted to engage him in unwanted sexual activity.  Following the recorded
statement, Maskunas asked Appellant to make a handwritten statement.  Maskunas
read Appellant his rights,  and Appellant initialed a document indicating that
he understood his rights and waived them.  In his written statement, Appellant
wrote that he went to Haslett’s house to smoke a “joint.”  After he and Haslett
smoked together, Haslett came out of his room in a state of undress.  Appellant
wrote that he “blacked out” and stabbed Haslett in the neck.  He wrote that he
went to his sister’s house, washed himself, and got a shirt.  A medical expert
who examined Haslett’s body concluded that he died as a result of stab or
cutting wounds to his neck and that he had defensive wounds on his hands.  

A
Trinity County grand jury indicted Appellant for the felony offense of murder. 
Appellant pleaded not guilty.  Appellant filed a motion to suppress the
statements he made to Ranger Maskunas.  A hearing was held, and the trial court
suppressed Appellant’s recorded statement because the recording did not contain
a rendition of Appellant’s rights as required by Texas Code of Criminal
Procedure, article 38.22.  The trial court denied Appellant’s motion to
suppress the written statement.  A jury found Appellant guilty as charged and
assessed punishment at imprisonment for life.  This appeal followed.  

 

Sufficiency of the Evidence

            In
his first issue, Appellant argues that the evidence is legally insufficient to
support the verdict.  

Applicable Law

The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence.  See Jackson v. Virginia,
443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); Willis v.
State, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref’d).  When
reviewing the sufficiency of the evidence, we view all of the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  Brooks v. State, 323 S.W.3d 893, 899 (Tex. Crim. App.
2010) (plurality opinion).  Under this standard, a reviewing court does not sit
as a thirteenth juror and may not substitute its judgment for that of the fact
finder by reevaluating the weight and credibility of the evidence.  Id.;
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
Instead, a reviewing court defers to the fact finder’s resolution of
conflicting evidence unless that resolution is not rational in light of the
burden of proof.  Brooks, 2323 S.W.3d at 899–900.  The duty of a
reviewing court is to ensure that the evidence presented actually supports a
conclusion that the defendant committed the crime.  See Williams v. State,
235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A
person is guilty of murder, as charged in this case, if he intentionally or
knowingly causes the death of an individual.  Tex.
Penal Code Ann. § 19.02(b) (Vernon 2003).

Analysis

            Appellant
argues that a rational finder of fact could not conclude beyond a reasonable
doubt that he killed Haslett knowingly or intentionally because Appellant told
the police that he “blacked out” during the incident.  We disagree.

            The
jury may believe all, some, or none of any witness’s testimony.  See Jones
v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998); Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  Appellant’s
statement to the police is not unlike a witness’s testimony, and we perceive no
reason that the jury could not have credited Appellant’s statement that he
stabbed Haslett but disbelieved his statement that he “blacked out” before
doing so.  There was evidence to support this conclusion.  James Manis
testified that Appellant’s plan, prior to the murder, was to go to Haslett’s
house and “get” Haslett to perform a sex act on him “or something like that”
and then to “cut his throat.”  Cody Gladney testified that Appellant asked him
to help with a robbery and that killing Haslett was mentioned in the
conversation.  After the murder, Appellant told Gladney that he killed Haslett
after Haslett propositioned him, but did not mention “blacking out.”  Instead,
Appellant told Gladney that being propositioned “freaked him out” and that he
stabbed Haslett.  Appellant said he thought Haslett was dead and was surprised
when Haslett jumped on his back.  At that point, Appellant said he stabbed
Haslett in the neck.  

            Viewing
the totality of the circumstances in the light most favorable to the verdict,
we conclude that the jury could have rationally found each element of murder
beyond a reasonable doubt.  The jury’s conclusion that Appellant killed Haslett
knowingly or intentionally is supported by the evidence and is a reasonable
conclusion to be drawn by a rational jury in light of the burden of proof.  We
overrule Appellant’s first issue.

 

Suppression of Written Statement

            In
his second issue, Appellant argues that the trial court erred in allowing his
written statement to be admitted into evidence.  Specifically, he asserts that
the police used a forbidden two step procedure by which investigators obtain a
statement without advising the suspect of his Miranda warnings
and then elicit the same statement after the administration of those warnings.

Standard
of Review

            We review a trial court’s ruling
on a motion to suppress in the light most favorable to the ruling.  See State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  The trial court
judge is uniquely situated to observe firsthand the demeanor and appearance of
a witness and to make factual determinations.  See State v. Ross,
32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990)).  The trial court is the sole trier of
fact, and we must afford almost total deference to the trial court’s factual
conclusions.  See Wiede v. State, 214 S.W.3d 17, 24–25 (Tex. Crim.
App. 2007).  We afford the same amount of deference to trial court’s rulings on
“application of law to fact questions,” also known as “mixed questions of law
and fact,” if the resolution of those ultimate questions turns on an evaluation
of credibility and demeanor.  Montanez v. State, 195 S.W.3d 101,
106 (Tex. Crim. App. 2006).  We review de novo wholly legal conclusions as well
as mixed questions of law and fact that do not turn on an evaluation of
credibility and demeanor.  Id.

Applicable
Law

            In
order for a statement taken from a person who is in custody to be admissible,
the police must advise the person that he has the right to remain silent,
that any statement he makes can be used against him, and that the person has a
right to an attorney before the statement is taken.  Miranda v. Arizona,
384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).  In Miranda,
the Court concluded that the possibility of coercion inherent in custodial
interrogations unacceptably raises the risk that a suspect’s privilege against
self-incrimination might be violated.  See United States v. Patane,
542 U.S. 630, 639, 24 S. Ct. 2620, 2627, 159 L. Ed. 2d 667 (2004) (plurality
opinion); Miranda, 384 U.S., at 467, 16 L. Ed. 2d 694, 86 S. Ct.
1602. To protect against this danger, the Miranda rule creates a
presumption of coercion, in the absence of specific warnings, that is generally
irrebuttable for purposes of the prosecution’s case in chief.  Patane,
542 U.S. at 639, 24 S. Ct. at 2627.  Also present in the Court’s calculation is
that an unwarned statement is less likely to be the product of the suspect’s
“free choice,” Miranda, 384 U.S. at 458, 86 S. Ct. at 1619,
although the voluntariness of the statement is a different but related
inquiry.  See Dickerson v. United States, 530 U.S. 428, 444, 120
S. Ct. 2326, 2336, 147 L. Ed. 2d 405 (2000).  Accordingly, “to reduce the risk
of a coerced confession and to implement the Self-Incrimination Clause,” the
Court determined that Miranda warnings must be given to suspects
before custodial interrogations.  Chavez v. Martinez, 538 U.S.
760, 790, 123 S. Ct. 1994, 155 L. Ed. 2d 984  (2003) (Kennedy, J., concurring
in part and dissenting in part).

Texas
has a more specific rule, requiring that the customary Miranda warnings
be given along with a warning that the suspect may terminate the interview at
any time.  See Tex. Code Crim.
Proc. Ann. art. 38.22 (Vernon 2005).  Unlike Miranda warnings,
which have no procedural requirements beyond that they be given, the warnings
required by article 38.22 must appear on the resulting written statement or
oral recording as a prerequisite to admissibility.  Id. art
38.22, §§ 2(a), 3(a)(2).  Generally, a statement obtained from a custodial
interrogation that does not comply with these rules cannot be used in a trial. 
See Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a), (b).  

            The
Supreme Court has held that confession obtained as part of a two step
interrogation violated “Miranda’s constitutional
requirement.”  Missouri v. Siebert, 542 U.S. 600, 604, 124 S. Ct.
2601, 2605, 159 L. Ed. 2d 643 (2004).  The Court described the two step
interrogation as a “technique of interrogating in successive, unwarned and warned
phases” and termed it a “new challenge to Miranda.”  Id.
at 609, 124 S. Ct. at 2608.  The threshold question presented in such a case, a
plurality of the Court concluded, is whether the warnings “could function
‘effectively’ as Miranda requires.”  Id. at 611-12,
124 S. Ct. at 2610.  In other words, does the warning “effectively advise the
suspect that he had a real choice about giving an admissible statement at that
juncture,” does the warning effectively convey that the suspect “could choose
to stop talking even if he had talked earlier.”  Id.  If not, the
plurality concluded, there existed no “practical justification” for concluding
that Miranda was satisfied or for treating the second stage of
the interrogation as distinct from the first.  Id. at 613, 124 S.
Ct. at 2610.[1] In that case, a plurality of the
court held that “a reasonable person” in the defendant’s position “would not
have understood [the warnings] to convey a message that she retained a choice
about continuing to talk.”  Id.  Justice Kennedy, who concurred
in the result, proposed a narrower standard whereby a calculated two step
interrogation would not yield admissible results unless curative measures,
which could include the mere passage of time along with administration of Miranda
warnings, were employed.  Id. at 622, 124 S. Ct. at 2616
(Kennedy, J., concurring).

            Because
the Siebert decision is a plurality decision, the Texas Court of
Criminal Appeals has applied the decision using the narrowest grounds of common
agreement.  See Carter v. State, 309 S.W.3d 31, 38 (Tex.
Crim. App. 2010).  Such an inquiry looks first to see if the officer
“deliberately employed a two step ‘question first, warn later’ interrogation
technique to circumvent [the] appellant’s Miranda protections.”  Id. 
The question of whether the officer employed such a technique is a factual
finding entitled to “highly deferential review.”  Id. at 40.  If
the officer does employ a deliberate two step interrogation strategy, the
officer has the responsibility to apply curative measures.  See Martinez
v. State, 272 S.W.3d 615, 626-27 (Tex. Crim. App. 2008).

Analysis

            Appellant
argues that the ranger investigating this case used a two step interrogation
technique to obtain a statement from him.  Applying the factors from the
plurality decision in Siebert, there are grounds on which to
conclude that the two interrogations, one videotaped, the second a written
statement, should be treated as one interrogation.  Siebert, 542
U.S. at 615, 124 S. Ct. at 2612.  The first round of interrogation was
detailed.  The content overlaps, the timing and setting are the same, there is
a continuity of police personnel, and the State did not show that the
interrogator’s questions did not treat the second round as a continuation of
the first.  

            But
this is not a complete reading of what happened at the interrogation conducted
in this case.  At the outset of the interrogation, after Appellant had just
begun to talk to him, the ranger interrupted Appellant and asked if he had been
arraigned, asked if he had been told of the charges, and asked if he had been
read his rights.  Appellant said he had been before a judge, knew he had been
charged with “homicide,” and acknowledged that he had been read his rights. 
The ranger paused and then asked Appellant if he wanted to talk to him.  Appellant
did talk to him after that, for nearly thirty minutes.  Following a short
break, Appellant gave a handwritten statement.  The form used for the
handwritten statement listed Appellant’s rights, and he initialed it to
indicate that he understood his rights and waived them.

The
underlying problem with a two step interrogation is that the first part of the
interrogation is unwarned and, therefore, inadmissible.  See Seibert,
542 U.S. at 608-09, 124 S. Ct. at 2608.  An interrogation with that structure
can result in the midstream application of Miranda warnings being
ineffective.  See id. at 617, 124 S. Ct. at 2613.  That did not
happen in this case.  Here, the officer did not read Appellant his Miranda
warnings at the outset of the interrogation, but he did reference the
earlier warning that had been given to Appellant at his arraignment.  The court
of criminal appeals has held that a previous reading of rights can meet the
requirements of Miranda.  See Ex parte Bagley, 509
S.W.2d 332, 337 (Tex. Crim. App. 1974).  In Biddy v. Diamond, 516
F.2d 118, 122 (5th Cir. 1975), twelve days passed between the initial Miranda
warnings and the relevant statement.  The officer asked the
defendant if she remembered her rights, and she answered affirmatively.  Id. 
So too, in this case, Appellant was read his rights at the magistrate’s hearing
April 3, 2009, and the ranger reminded him that he had been read his rights at
the outset of the interrogation on April 6, 2009.  

The
trial court did not find a Miranda violation, and the record
supports that conclusion.  The ranger thought he had administered Miranda
warnings at the outset of the interrogation, and he would not have addressed
the warnings Appellant had already received if he wished to conduct a two step
interrogation.  The principal difference between the circumstances in this case
and those in Siebert and Martinez is that the
suspects in those cases had not been apprised of their rights before the first
interrogation.  Siebert, 542 U.S. at 608-09, 124 S.
Ct. at 2608, Martinez, 272 S.W.3d at 622–23.

The
record supports the trial court’s conclusion that the ranger did not comply
with article 38.22, Texas Code of Criminal Procedure, in the taking of the
recorded oral statement.  The statement is recorded, as required, but does not
contain a recitation of Appellant’s rights.  See Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (Vernon
2005).  The written statement does comply with article 38.22 because it
contains the required warnings on the face of the document.  

The
requirement imposed by article 38.22 that a recording of a custodial
interrogation contain a warning of rights is a different kind of requirement from
the one imposed by Miranda.  A midstream Miranda warning
can be ineffective when “a reasonable person” in the suspect’s position “would
not have understood [the warnings] to convey a message that [he] retained a
choice about continuing to talk.”  Siebert, 542 U.S. at 617, 124
S. Ct. at 2613; Carter 309 S.W.3d at 36-37.  There is no parallel
requirement in the Texas law that the recording of the warnings be effective or
convey anything to the suspect.  In fact, article 38.22 does not require that
the suspect know that the warning of his rights is being recorded.  

Because
the officer did not give Appellant his article 38.22 warnings on the same
recording in which Appellant made a statement, the State could not comply with
a procedural prerequisite for the admission of the recorded statement.  See Davidson
v. State, 25 S.W.3d 183, 186 n.4 (Tex. Crim. App. 2000).  That
procedural requirement was met for the written statement.  Accordingly, we hold
that the trial court did not err in allowing the second written statement.  We
overrule Appellant’s second issue.

 

Disposition

            Having
overruled Appellant’s two issues, we affirm the judgment of the
trial court.

 

                                                                                                    
SAM GRIFFITH    

                                                                                                             
Justice

 

 

Opinion
delivered January 12, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

(DO NOT PUBLISH)









[1] 
The plurality decision offered five “relevant facts that bear on whether Miranda
warnings delivered midstream could be effective.”  Those facts are

 

(1) the completeness and
detail of the questions and answers in the first round of interrogation, 

(2) the overlapping content
of the two statements, 

(3) the timing and setting of
the first and the second rounds of interrogation, 

(4) the continuity of police
personnel, and 

(5) the degree to which the
interrogator's questions treated the second round as continuous with the first.


 

Siebert, 542
U.S. at 615, 124 S. Ct. at 2612.